U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 APR -3 PM 2: 13

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOHN C. BRAYSHAW, JR.,               )
                                     )
            Plaintiff,               )
                                     )
        v.                           )        Case No. 5:13-cv-253
                                     )
CITY OF BURLINGTON and               )
OFFICER JASON BELLAVANCE,            )
                                     )
            Defendants.              )

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**
(Doc. 52)

Plaintiff John Brayshaw, Jr. brings this action against Defendant City of

Burlington ("Burlington") and Defendant Officer Jason Bellavance ("Officer

Bellavance") under 42 U.S.C. § 1983, asserting a claim of excessive force in violation of

Plaintiff's Fourth Amendment rights, and claims under Vermont law for assault and

battery, excessive force, and intentional infliction of emotional distress.[1]  Pending before

the court is Defendants' motion for summary judgment in which they argue Officer

Bellavance applied a reasonable amount of force under the circumstances and is protected

by qualified immunity.

On January 22, 2015, the court heard oral argument on this motion and took it

under advisement.  Plaintiff is represented by Russell D. Barr, Esq. and Jennifer J. Lajoie,

Esq.  Defendants are represented by Pietro J. Lynn, Esq.

---

[1] Plaintiff also asserts claims for negligent supervision, municipal liability, and excessive force
against Burlington. On March 18, 2014, pursuant to a Stipulated Order, Plaintiff agreed to
dismiss his claim for false arrest; stay the claims against Burlington until his claims against
Officer Bellavance are resolved; and bifurcate the trials of his claims against Officer Bellavance
and Burlington.

## I.  Factual and Procedural Background.

### A.  Undisputed Facts.

On December 31, 2011, Plaintiff attended a New Year's Eve celebration with his sister, Jade Brayshaw. After midnight on January 1, 2012, Plaintiff and Ms. Brayshaw patronized Red Square, a bar on Church Street in Burlington, Vermont. They remained at the bar until it closed, at approximately 3:00 a.m. At the time, Ms. Brayshaw was intoxicated and Plaintiff admits to being "a little buzzed." (Doc. 52-3 at 20, Plaintiff's Dep. at 100:19.)

A kebab stand and a hot dog stand were stationed across the street from Red Square. When Plaintiff and Ms. Brayshaw left the bar, they joined the line for the kebab stand. A group of males in the line were loud and causing a commotion. Amir Jusafagic, who was the vendor of the kebab food cart, refused to serve the males, Plaintiff, and his sister, and sent them all to a nearby hot dog stand. Shortly thereafter, Jacqueline Bartko, the hot dog stand vendor, approached Mr. Jusafagic and complained that customers were not allowing her to work and asked him to get the police. Mr. Jusafagic summoned Officer Bellavance, who was on foot patrol, to advise him of the disturbance in the food cart lines, telling him that another vendor was having difficulty working because of it. In the hot dog line, Officer Bellavance observed Ms. Brayshaw playfully punching Plaintiff's stomach. He approached and asked Ms. Brayshaw to stop her behavior and leave the line and she did so. Officer Bellavance then asked Plaintiff to leave the line. When Plaintiff refused, Officer Bellavance radioed for back-up and removed Plaintiff from the line by taking hold of Plaintiff's left arm. At the time, Plaintiff was not under arrest and remained free to leave.

Thereafter, a bystander began to video record the interaction between Plaintiff and Officer Bellavance. The video depicts Officer Bellavance and Plaintiff surrounded by a small crowd of individuals who appear to be actively participating in the exchange between them. Officer Bellavance is seen moving Plaintiff away from the crowd by taking his left arm and walking him up the street in an escort position.

Officer Bellavance did not advise Plaintiff he was under arrest as he escorted Plaintiff up the street. Although it is not clear that Plaintiff "squar[ed] off" with Officer Bellavance as Defendants contend (Doc. 52-1 at 3, ¶ 18), it is clear that Plaintiff does not fully cooperate with Officer Bellavance's escort. Instead, the video depicts Plaintiff turning to face Officer Bellavance so that Plaintiff is walking backwards which impedes their progress away from the crowd. Plaintiff is considerably taller than Officer Bellavance and appears somewhat unsteady on his feet and his body is moving freely except for his left arm which Officer Bellavance is grasping. As they continue up the street, Plaintiff appears to make several attempts to break free of Officer Bellavance. The video depicts Plaintiff swinging his right arm into the air. It is not clear from the video whether Plaintiff is merely flailing his free arm or attempting to strike Officer Bellavance. Officer Bellavance responds by taking Plaintiff to the ground, using what he describes as an "arm bar takedown," which caused Plaintiff's head to strike the pavement. The video ends at this point.

Corporal Philip Small arrived at the scene shortly after Officer Bellavance took Plaintiff to the ground. The officers handcuffed Plaintiff with some difficulty as Plaintiff continued to move his body and as Ms. Brayshaw attempted to intervene. Plaintiff was transported to the Fletcher Allen Health Care Emergency Department ("Fletcher Allen"), where he was diagnosed with a "Head Laceration and Alcohol Intoxication." (Doc. 52-5 at 4.) Plaintiff was held at a correctional facility and, when released, returned to Fletcher Allen on January 1, 2012. An emergency room staff member, Paul Jerard, PA, noted Plaintiff "smells of etoh [(alcohol)]." *Id.* at 8. Plaintiff was diagnosed with fractures to his left orbit bone, frontal and ethmoid sinus, teeth, and right occipital condyle, as well as pneumocephalus.

After Plaintiff was taken into custody, Officer Bellavance returned to the scene and interviewed witnesses. In a sworn statement, Mr. Jusafagic stated that:

[H]is sister was constantly around me and in the front of me and I was not able to work. . . . I was thinking they are boyfriend and girlfriend. It ended up that's a brother and sister. I told them like—can you move your sister please away. And then he says, well what the f**k, here's money. And

3

then I said, I am not going to serve you. Just leave. And she kept coming—she didn't let me work.

(Doc. 52-4 at 3:8-3:13.) "The guy was out of control. He was too drunk to think clear and he was totally out of control." *Id.* at 3:21-3:22.

I have seen coming here in the cart, going in the face and then [Officer Bellavance] tried to just tell [Plaintiff] to go away but he was kept coming back to you, kept coming back to [Officer Bellavance]. And then [he] tried to, I don't know, tried to make him quiet. To listen to [Officer Bellavance].

*Id.* at 4:9-4:11.

Jacqueline Bartko, the operator of the hot dog stand, provided a sworn statement,

asserting that:

[Plaintiff and his sister] came up to the hot dog stand and he was leaning into me drunkenly and not able to stand up straight, and was using me as his crutch. And so I asked him to move back more than once and then I proceeded to bump him back in self-defense almost, and then I looked at my partner and asked her to get rid of them because I was on the grill working food. And so the last that I experienced them at the stand they were making a mess with her. And then to my knowledge [Mr. Jusafagic] came down to get rid of them and then [Mr. Jusafagic] . . . got the cop.

*Id.* at 5:2-5:8.

When I looked down [Officer Bellavance was] alone and at first [he] had been just to the left of the hotdog stand, and as a crowd was forming, which seemed to be [Plaintiff's] buddies because they were getting involved. I saw [Officer Bellavance] in defense sort of push him away and then as [Officer Bellavance] got further down the street I was actually concerned for [Officer Bellavance] because there was no back up and there was a crowd of at least a half a dozen people that were sort of mobbing [Officer Bellavance] for a good long time. About as long as it took me to make 3 cheese steaks.

*Id.* at 5:12-5:17.

On March 20, 2012, Plaintiff was arraigned in state court on charges of disorderly conduct, in violation of 13 V.S.A. § 1026(a)(1), and resisting arrest, in violation of 13 V.S.A. § 3017(a)(1). On April 18, 2012, the State of Vermont dismissed the resisting

arrest charge and Plaintiff thereafter entered and successfully completed a diversion
program for the disorderly conduct charge.

### B. Disputed Facts.

The parties dispute the degree to which Plaintiff was intoxicated. Plaintiff
contends that although the medical records indicate that he was intoxicated, they are
unreliable because no testing of his blood alcohol concentration was performed.
Defendants, in turn, rely on Mr. Jusafagic's and Ms. Bartko's post-incident sworn
statements as evidence of the degree of Plaintiff's intoxication, as well as medical records
that indicate Plaintiff was intoxicated upon his arrival at Fletcher Allen and still smelled
of alcohol when he returned there after he was released from the correctional center.

Defendants contend that both Plaintiff and Ms. Brayshaw were engaged in play
boxing behavior, but Plaintiff asserts that only Ms. Brayshaw engaged in this behavior.
Although Defendants claim that Mr. Jusafagic identified Plaintiff and Ms. Brayshaw as
the cause of the disturbance in the food cart lines, as Plaintiff points out, Mr. Jusafagic
did not identify who was causing the disturbance when he initially sought Officer
Bellavance's assistance.

The parties dispute how Plaintiff responded to Officer Bellavance's order to leave
the hot dog line. Officer Bellavance contends Plaintiff stated he "'[w]as getting his
f**king hot dog[,]'" (Doc. 52-6 at 2, ¶ 3), while Plaintiff contends he merely stated: "No,
I want to get my food." (Doc. 52-3 at 16; Plaintiff's Dep. at 84:2.) Although it is
undisputed that Officer Bellavance never advised Plaintiff he was under arrest as he
escorted Plaintiff up the street, the parties acknowledge that Officer Bellavance testified
in his deposition that, as he escorted Plaintiff away from the crowd, he "told [Plaintiff] he
needed to go home or that he could be arrested[.]" (Doc. 67-2 at 17; Officer Bellavance's
Dep. at 62:13-62:14.) Because this testimony is not included in the parties' factual
submissions, it is not clear whether Officer Bellavance's testimony is contested.

Defendants claim Officer Bellavance employed an appropriate arm bar takedown
when he forced Plaintiff to the ground. In contrast, Plaintiff contends that Officer
Bellavance did not correctly apply the arm bar takedown because Officer Bellavance did

5

not control Plaintiff's fall or direct him to the ground. [2] Thomas Buda, Plaintiff's expert witness and a former officer with the New York City Police Department, opined that Officer Bellavance did not properly apply the arm bar takedown and "it was inappropriate to throw [Plaintiff] down to the ground that way." (Doc. 67-4 at 27; Mr. Buda's Dep. at 105:15-105:16.)

The parties dispute whether Officer Bellavance interviewed witnesses immediately after the incident or hours later. Plaintiff does not dispute the existence of sworn statements made by Mr. Jusafagic and Ms. Bartko, but he contests their accuracy. He cites Mr. Jusafagic's deposition wherein he testified that Ms. Bartko was not working for him, he did not "see any interaction between" Plaintiff and Officer Bellavance, and he did not "see [Plaintiff] fight with Officer Bellavance[.]" (Doc. 67-7 at 28; Mr. Jusafagic's Dep. at 108:16-108:18.) He also offers an affidavit from Aaron Scowcroft, who avers that he witnessed Officer Bellavance's encounter with Plaintiff. According to Mr. Scowcroft, Plaintiff did not threaten Officer Bellavance, throw any punches at Officer Bellavance, raise his hands, or pose a threat to Officer Bellavance or the crowd. Instead, Officer Bellavance "began to man-handle Mr. Brayshaw away[,]" and Plaintiff was stumbling as he was dragged down Church Street. (Doc. 67-8 at 2, ¶ 19.) From Mr. Scowcroft's perspective, "[w]ithout any warning or provocation, the Officer then flipped Mr. Brayshaw to the ground where he landed face first." *Id.* at 2, ¶ 21. Mr. Scowcroft's perception of the events is contradicted, in material respects, by the video. [3]

---

[2] According to the Vermont Criminal Justice Training Council's Non-Lethal Force Training Manual, "[a] takedown provides the means to direct a subject to the ground to gain control and for handcuffing. . . . [A]s the subject moves to the ground you should lead the way by using an appropriate pattern of movement to avoid being pulled onto the subject's back[.]" (Doc. 67-10 at 2.)

[3] Where there is an unaltered video recording of an incident, the court may rely on the recording to establish the facts. *See Scott v. Harris*, 550 U.S. 372, 379-81 (2007); *see also MacLeod v. Town of Brattleboro*, 2012 WL 5949787, at *7 (D. Vt. Nov. 28, 2012), *aff'd*, 548 F. App'x 6 (2d Cir. 2013) ("In assessing whether there are triable issues of fact, the court may rely on facts as depicted in an unaltered videotape and audio recording, even when such facts contradict those claimed by the nonmoving party.").

6

Plaintiff contests several of Officer Bellavance's statements in his affidavit of probable cause, including: (1) a statement that Mr. Jusafagic "told me that there was a male and a female that had tried to fight with him[,]" (Doc. 52-6 at 2, ¶ 1), and that "[t]he male and female that [Mr. Jusafagic] pointed out appeared to be engaged in some sort of fighting[,]" *id.* at 2, ¶ 2; (2) a statement that Plaintiff's "behavior appeared to be escalating. . . . [Plaintiff] started to push against the people holding him back and he continued to reach for me through their arms[,]" *id.* at 2-3 at ¶ 5; and, (3) that Ms. Brayshaw "came over and tried to push me off" of Plaintiff. *Id.* at 3, ¶ 6. Plaintiff denies that his behavior escalated the situation in the food cart lines or that he gave Officer Bellavance cause to fear for his safety.

Once Plaintiff was in handcuffs, there is a dispute regarding whether he was able to walk away from the scene. Officer Bellavance stated that Plaintiff "became compliant" and "got to his feet and walked to the intersection of Church St and Main St[,]" *id.* at 3, ¶ 8, whereas Corporal Small testified "we proceeded to pick the subject up off the ground and walk him down[.]" (Doc. 67-5 at 6:4-6:5.)

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In evaluating a motion for summary judgment, 'courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.'" *Raspardo v. Carlone*, 770 F.3d 97, 111 (2d Cir. 2014) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

"Although the burden of demonstrating that no material fact exists lies with the moving party, unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving

7

party." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (internal quotation marks and alterations omitted). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir. 1993); Fed. R. Civ. P. 56.

### B.    Whether the Disputed Facts Preclude Summary Judgment.

"On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

> Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

*Anderson*, 477 U.S. at 248 (internal citation omitted).

In order to prevail on his section 1983 claim, Plaintiff must establish that Officer Bellavance used excessive force in violation of the Fourth Amendment when he employed an arm bar takedown that caused Plaintiff's head to strike the pavement. *See Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) ("The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."). In order to prevail on his defense of qualified immunity, Officer Bellavance must establish either that the force he used was reasonable under the circumstances, or that any constitutional right he violated was not clearly established. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 134 (2d Cir. 2013) ("Qualified immunity . . . is an affirmative defense that the defendants have the burden of

8

raising in their answer and establishing at trial or on a motion for summary judgment.")
(internal quotation marks omitted); *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006)
("Qualified immunity shields police officers acting in their official capacity from suits for
damages . . . unless their actions violate clearly-established rights of which an objectively
reasonable official would have known.") (internal quotation marks omitted).

The events leading up to Officer Bellavance's use of force are depicted on a video
which adequately documents those events. *See Kalfus v. N.Y. & Presbyterian Hosp.*, 476
F. App'x 877, 881 (2d Cir. 2012) (finding, in an excessive force claim, plaintiff's
"challenges to this documentary [video] evidence are unavailing."). Officer Bellavance
makes no claim that he employed the arm bar takedown in response to Plaintiff's
behavior in the food cart lines. Accordingly, the following disputes are immaterial to a
determination of the pending motion: 1) the degree to which Plaintiff was disruptive in
the food cart line; 2) whether Mr. Jusafagic attributed the disturbance in the food cart
lines to Plaintiff when he reported it to Officer Bellavance; 3) the degree of Plaintiff's
intoxication; and 4) the accuracy of Mr. Jusafagic's and Ms. Bartko's post-event
statements and Officer Bellavance's affidavit in support of probable cause. The disputed
facts therefore do not preclude summary judgment if Officer Bellavance demonstrates
that he is entitled to judgment as a matter of law in his favor.

## C. Qualified Immunity.

"Qualified immunity shields federal and state officials from money damages
unless a plaintiff pleads facts showing (1) that the official violated a statutory or
constitutional right, and (2) that the right was 'clearly established' at the time of the
challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). "Courts have
discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 134
S. Ct. 1861, 1866 (2014). "As the qualified immunity defense has evolved, it provides
ample protection to all but the plainly incompetent or those who knowingly violate the
law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

With regard to the first prong, the "Fourth Amendment protects individuals from
the government's use of excessive force when detaining or arresting individuals." *Jones*,

9

465 F.3d at 61. "In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, plaintiffs must establish that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

With regard to the second prong, in order to establish that a right is "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). To establish that an officer's conduct violates clearly established law, the court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083.

When "the factual record is not in serious dispute . . . [,] [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better for the court to decide." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990), 498 U.S. 967 (1990)). "The rule requiring the judge to resolve questions of reasonableness on summary judgment in qualified immunity cases where the material facts are not in dispute is consistent with the doctrine's purpose of providing immunity from suit, as well as a defense to liability." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985)).

## D. Whether Officer Bellavance Applied Excessive Force When He Took Plaintiff to the Ground.

Plaintiff claims Officer Bellavance used excessive force by "flipping" Plaintiff down to the ground without breaking his fall or otherwise protecting him from injury. Plaintiff asserts that this excessive force was in response to a relatively trivial disturbance

10

in a food cart line which did not, itself, provide grounds for arrest or authorize Officer Bellavance to make an "unwarranted intrusion and seizure" of Plaintiff. (Doc. 67 at 6.) Under these circumstances, Plaintiff contends that a rational jury could find that his injuries were caused by excessive force.

Officer Bellavance, in contrast, argues that, any force he used was reasonable under the circumstances because he has probable cause to believe Plaintiff had committed a crime and when he sought to investigate that crime, Plaintiff physically resisted him in a manner that posed an immediate threat to his safety and that of others.

The analysis of an excessive force claim is "fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96. "The touchstone of the inquiry . . . is reasonableness, and in measuring it, [the courts] consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Jones*, 465 F.3d at 61 (internal quotation marks omitted).

### 1. The Severity of the Crimes at Issue and the Governmental Interest at Stake.

Plaintiff was charged with disorderly conduct under Vermont law, which provides that "[a] person is guilty of disorderly conduct if he or she, with intent to cause public inconvenience or annoyance, or recklessly creates a risk thereof: (1) engages in fighting or in violent, tumultuous, or threatening behavior[.]" 13 V.S.A. § 1026(a)(1). Under Vermont law, disorderly conduct is a misdemeanor.[4]

Plaintiff was also charged with resisting arrest which under Vermont law requires "[a] person [to] intentionally attempt[] to prevent a lawful arrest on himself or herself,

---

[4] *See* 13 V.S.A. § 1 ("Any . . . offense whose maximum term of imprisonment is more than two years, for life or which may be punished by death is a felony. Any other offense is a misdemeanor."); 13 V.S.A. § 1026(b) ("A person who is convicted of disorderly conduct shall be imprisoned for not more than 60 days . . . A person who is convicted of a second or subsequent offense under this section shall be imprisoned for not more than 120 days[.]").

which is being effected or attempted by a law enforcement officer, when it would reasonably appear that the latter is a law enforcement officer." 13 V.S.A. § 3017(a). Under Vermont law, resisting arrest is also a misdemeanor. *See id.* (stating the punishment for resisting arrest is: (1) for the first offense, [imprisonment for] not more than one year . . . ; (2) for the second offense and subsequent offenses, [imprisonment for] not more than two years[.]").

Because Plaintiff was not convicted of any crime, the court must examine whether Officer Bellavance had a reasonable suspicion or probable cause to believe Plaintiff was engaging in disorderly conduct or resisting arrest when he took Plaintiff to the ground. In conjunction with this inquiry, the court must also consider the governmental interests at stake.

"Vermont's disorderly conduct statute provides a common intent element: 'with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof.'" *State v. Albarelli*, 2011 VT 24, ¶ 9, 189 Vt. 293, 19 A.3d 130. "Public is defined as a place 'open to common or general use.'" *State v. Lund*, 475 A.2d 1055, 1061 (Vt. 1984) *overruled on other grounds by State v. Dumont*, 499 A.2d 787 (Vt. 1985) (quoting *Webster's New International Dictionary* at 2005 (1961)). "The term 'violent' contemplates a wide range of inappropriate behavior[,]" which includes "behavior that could be characterized as furious, severe, vehement, extreme, [or] intense" and "unjust or improper force." *State v. O'Connell*, 510 A.2d 167, 171 (Vt. 1986) (internal quotation marks omitted). "While it is true that the word tumult may refer to the commotion and agitation of a large crowd, it has also been defined as a violent outburst." *Lund*, 475 A.2d at 1060 (internal quotation marks omitted). "A threat is a communicated intent to inflict harm on person or property." *State v. Cole*, 554 A.2d 253, 255 (Vt. 1988).

The Vermont Supreme Court has upheld convictions for disorderly conduct in a wide range of circumstances. *See, e.g.*, *Cole*, 554 A.2d at 255 (finding that "defendant's act in grabbing the flashlight [in the hand of a police officer] meets the statutory standard" for disorderly conduct.); *State v. Begins*, 509 A.2d 1007, 1008 (Vt. 1986) (concluding that kicking at police officers and attempting to bite the officers "more than

12

justifies the court's finding of violent behavior as contemplated by § 1026(1)"); *Lund*, 475 A.2d at 1058 (affirming a disorderly conduct conviction where "the defendant attempted to bite [the officer's] hand and started yelling further obscenities at him.").

Here, Officer Bellavance approached Plaintiff in a public place in the early morning hours of New Year's Day in response to a citizen's complaint of a disturbance in the hot dog line that was interfering with the vendor's work. *See Loria v. Gorman*, 306 F.3d 1271, 1289 (2d Cir. 2002) ("[A]n officer may rely on a complaint to establish probable cause and cannot be held liable for a constitutional violation simply because the complaint turns out to have been false.") (citing *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997)); s*ee also Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp 351, 355 (S.D. N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to be the police is assumed."), *aff'd* 993 F.2d 1534 (2d Cir.), *cert. denied*, 510 U.S. 817 (1993). When Officer Bellavance witnessed Ms. Brayshaw playfully punching Plaintiff in the stomach, he asked her to move away from the hot dog line and she did so. When Officer Bellavance made this same request to Plaintiff, Plaintiff refused to move and insisted on getting his food. Contrary to Plaintiff's contention, it was not unlawful for Officer Bellavance to verbally ask Plaintiff to leave the food cart line or to take Plaintiff's arm and physically move him away from the line when Plaintiff refused to comply with Officer Bellavance's verbal request. At the time, Officer Bellavance was investigating a report of disorderly conduct and "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Although the crime under investigation was a misdemeanor, it had the potential to rapidly ripen into a more serious crime which could threaten public safety. The governmental interests at stake were thus not insignificant. *See Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 612 (6th Cir. 2005) ("[W]e remain aware of the city's significant interest in crowd control, traffic control, and public safety."); *Cuviello v. Expo*, 2013 WL 3894164, at \*6 (E.D. Cal. July 27, 2013)

(recognizing "the substantial government interest of promoting public safety and crowd control"); *see also Gomez v. City of Whittier*, 211 F. App'x 573, 576 (9th Cir. 2006) ("In light of the officers' legitimate interest in maintaining control of the crowd, and based on plaintiffs' admitted behavior, the officers could have reasonably felt threatened and the level of force used was therefore reasonable and necessary to control [the] rapidly evolving and escalating situation.") (internal quotation marks omitted).

Plaintiff emphasizes that Officer Bellavance did not intend to arrest Plaintiff for disorderly conduct when he physically removed Plaintiff from the food cart lines. However, when thereafter Plaintiff continued to physically resist Officer Bellavance's efforts to move him away from the crowd and when an unruly crowd began to participate in their exchange, it was objectively reasonable for Officer Bellavance to believe he had probable cause to arrest Plaintiff for disorderly conduct.[5] Officer Bellavance's subjective motives and intentions at the time are irrelevant. *See Graham*, 490 U.S. at 396 (explaining that the "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.") (internal citations omitted).

Officer Bellavance's argument that he also had probable cause to arrest Plaintiff for resisting arrest is less persuasive. Although not dispositive, generally a law

---

[5] *See Taylor v. Ridley*, 904 F. Supp. 2d 222, 231 (E.D.N.Y. 2012) (holding "defendants had probable cause to arrest plaintiff" for disorderly conduct where the plaintiff "rejected [the officer's] directives to disperse from the parking lots in which a large crowd, with a least one loud, intoxicated and unruly individual, had congregated"); *Sallie v. Lynk*, 2012 WL 995245, at *16 (W.D. Pa. Mar. 23, 2012) (granting partial summary judgment to defendant officers where "[i]t was only after the crowd began to react to [the plaintiff's] ongoing criticisms and close in on the officers that [the officer] sought to control the threat from the crowd by removing [the plaintiff], the primary inciter."); *see also* Vt. R. Crim. P. 3(c)(3) ("The officer may arrest the person [for a misdemeanor] without a warrant if the officer has probable cause to believe: . . . [a]rrest is necessary to prevent the continuation of the criminal conduct for which the person was detained, to prevent harm to the person detained or harm to another person.").

14

enforcement officer should advise a person that he or she is under arrest prior to taking that person into custody if the person is to later be charged with resisting arrest. *See, e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (finding an officer's "treatment was not reasonable for a nonviolent misdemeanant who was neither dangerous nor fleeing" where the officer tackled the plaintiff because "a reasonable officer should, at a minimum, have ordered [the plaintiff] to submit to an arrest or used minimal force to grab him while informing him that he was under arrest."). It is undisputed that Officer Bellavance never advised Plaintiff he was under arrest as he escorted him away from the crowd. Instead, according to his own testimony, Officer Bellavance was planning to release Plaintiff if he peaceably left the scene. After Plaintiff was taken to the ground, there is a disputed issue of fact regarding whether Plaintiff was compliant with the officers' efforts to handcuffed him and escort him off the street. As this activity occurred after any alleged use of excessive force, it cannot be deemed a crime under investigation when the force was used.

Examining the undisputed evidence in the light most favorable to Plaintiff, the court cannot find, as a matter of law, that Officer Bellavance had probable cause to arrest Plaintiff for resisting arrest prior to taking him to the ground. Accordingly, the crime under investigation remains disorderly conduct, Officer Bellavance had probable cause to arrest Plaintiff for it, and the governmental interests at stake included investigation of that crime, crowd control, and the protection of public safety.

**2.    Whether the Force Used was Reasonable.**

Officer Bellavance's initial effort to separate Plaintiff from the disorderly crowd was a simple verbal request that Plaintiff leave the hot dog line. According to Plaintiff, he and his sister were "behind a group of guys that were loud and causing a commotion" in the kebab line and he knew that Mr. Jusafagic "thought the group of guys [were] friends of [Plaintiff]" and thus "refused to serve the group of guys and [Plaintiff] and his sister and sent them all to a nearby hot dog stand." (Doc. 67 at 2.) When Officer Bellavance approached him, Plaintiff was therefore aware that he was suspected of contributing to the kebab line disturbance. This belies any claim by Plaintiff that it was

15

irrational and objectively unreasonable for Officer Bellavance to single him out. To the contrary, in light of Mr. Jusafagic's complaint that the disturbance had moved to the hot dog line, when Officer Bellavance approached and saw Ms. Brayshaw playfully punching Plaintiff in the stomach, it was objectively reasonable for Officer Bellavance to assume Plaintiff and his sister were involved in the kebab line disturbance and were preparing to continue that disturbance in the hot dog line.

When Plaintiff refused to comply with Officer Bellavance's verbal request that he leave the hot dog line, Officer Bellavance took hold of Plaintiff's left arm. Although Plaintiff erroneously contends this use of force was unlawful, he does not assert that it was in any respect painful or caused him any injuries. This minor escalation in force was objectively reasonable in light of clear evidence that a mere verbal request would not suffice. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (determining it was reasonable for law enforcement to use force where suspect has already disobeyed one direct order from law enforcement); *Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (finding law enforcement's use of force was not excessive where officers "were faced with a group that refused to obey officers' commands").

As Officer Bellavance attempted to escort Plaintiff away from the crowd, Plaintiff actively resisted that escort. No rational jury could view the video and conclude otherwise. Plaintiff's active non-compliance included turning to face Officer Bellavance, thereby causing Officer Bellavance to attempt to move Plaintiff up the street as Plaintiff walked backwards. It also included Plaintiff swinging his free arm in such a manner that he could potentially strike Officer Bellavance. In such circumstances, it was objectively reasonable for Officer Bellavance to believe that Plaintiff was preparing to commit the more serious crime of assault on a police officer. *See* 13 V.S.A. § 1023(a) ("A person is guilty of simple assault if he or she: (1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or . . . (3) attempts by physical menace to put another in fear of imminent serious bodily injury."); *see also id.* § 1028(a) (imposing additional penalties for "[a] person convicted of a simple or aggravated assault against a law enforcement officer"). It was also objectively reasonable for Officer Bellavance to

16

use some measure of force to defend himself against this potential assault. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) *modified by* 14 F.3d 583 (11th Cir. 1994) ("When [the plaintiff] raised his hands, a reasonable officer in [the defendant's] place could have concluded that the technique [the defendant] used was needed to stop [the plaintiff] from becoming violent."). The only question is whether the degree of force used by Officer Bellavance was an excessive response to the threat posed.

Several courts have described an arm bar takedown as a "minimal" or "limited" use of force that may be used to subdue disorderly persons.[6] The District of Vermont has previously found that the use of an arm bar takedown may also be used to control intoxicated and uncooperative suspects.[7] Examining the evidence in the light most favorable to Plaintiff, because Officer Bellavance took Plaintiff to the pavement without

---

[6] *See, e.g., Lloyd v. Tassell*, 384 F. App'x 960, 962 (11th Cir. 2010) (affirming a district court's conclusion that "the amount of force used was minimal" based on "a 'lateral arm bar takedown'"); *B.J.R. ex rel. Garcia. v. Golgart*, 2013 WL 3455598, at *7 (D. Minn. July 9, 2013) (holding that where the officer took the plaintiff "to the ground using the arm-bar technique[,]" "the minimal force used by [the officer] was reasonable, as a matter of law, given the circumstances"); *Lagasse v. City of Waterbury*, 2011 WL 2709749, at *8 (D. Conn. July 12, 2011) ("It is undisputed that [the officer] used limited physical force, in the form of two palm strikes and the application of an arm bar, to defend himself and overcome [the plaintiff's] resistance to effect his restraint and ultimate arrest."); *Beshears v. Winters*, 2011 WL 165188, at *8 (C.D. Ill. Jan. 18, 2011) (determining "[t]he use of arm-bar and take-down maneuvers were simply not excessive. . . . The amount of force ultimately used was minimal and efficiently employed in a good faith effort to maintain discipline and jail security and not to maliciously or sadistically cause harm to Plaintiff.").

[7] *See, e.g., Leno v. Stupik*, 2008 WL 5412849, at *4-5 (D. Vt. Dec. 29, 2008) (holding the use of "an arm bar takedown to place [the plaintiff] in custody" was a "reasonable [use of] force" and that "even if [the officer's] use of force was not reasonable under the circumstances, [the officer] had substantial grounds to conclude that he had legitimate justification under the law for acting as he did.") (internal quotation marks omitted); *Morin v. Richardson*, 2005 WL 2138709, at *2-3 (D. Vt. Aug. 30, 2005) (finding the officer used a reasonable amount of force, despite the plaintiff's representation that the officer "'slamm[ed] his face' into the sidewalk[,]" where the plaintiff was intoxicated, was in a bar where there had been a brawl, and "display[ed] difficulty in responding to the defendant's attempts to place him in the police cruiser"); *Flanigan v. Town of Colchester*, 171 F. Supp. 2d 361, 365-66 (D. Vt. 2001) (granting summary judgment to an officer who took the plaintiff to the ground, which caused the plaintiff to suffer a fractured orbital bone, because the plaintiff "told the officers 'no,' shook his hands, and took a few steps away from the officers" while they were trying to handcuff him and although plaintiff's injury was "serious," it was "not a surprising result of a reasonable police response to [his] conduct").

17

breaking his fall, the court cannot conclude, as a matter of law, that the maneuver was a "minimal" or "limited" use of force in the circumstances of this case. *See Graham*, 490 U.S. at 395 (noting that "the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out.").

However, "an officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). Correspondingly, officers do not use excessive force where they make an objectively reasonable mistake of fact regarding the amount of force required or their ability to employ a takedown maneuver in a manner that minimizes harm to the suspect. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more than in fact was needed."); *Sheridan v. Trickey*, 2010 WL 5812678, at \*9 (D. Or. Dec. 16, 2010), *report and recommendation adopted*, 2011 WL 588769 (D. Or. Feb. 10, 2011) ("Furthermore, [the officer] made an honest mistake of fact when he concluded that a takedown could be executed under the circumstances in a manner that minimized harm to [the plaintiff]; there is no evidence that suggests [the officer] acted to deliberately harm [the plaintiff] or that he executed the takedown knowing that [the plaintiff] likely would be hurt.").

"[C]laims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated[.]" *Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "'Not every push or shove, even if it may later seem unnecessary

18

in the peace of a judge's chambers, violates the Fourth Amendment.'" *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 396).

In this case, in the light most favorable to Plaintiff, Officer Bellavance performed an imperfect arm bar takedown which caused Plaintiff's head to hit the pavement. Officer Bellavance neither attempted to break Plaintiff's fall nor was there a reasonable opportunity for him to do so in light of the speed with which Plaintiff fell. When he employed this use of force, it was objectively reasonable for Officer Bellavance to believe an assault by Plaintiff was imminent. His immediate reaction to that threat appeared to be instinctive rather than deliberative. At the time, Plaintiff was flailing his free arm, appeared unsteady on his feet, and was exhibiting some level of intoxication. It is thus not completely clear whether it was Officer Bellavance's imperfect arm bar takedown or Plaintiff's imperfect balance, or both, that caused Plaintiff's instantaneous fall. Although it was conceivable that Officer Bellavance's use of force would cause Plaintiff to suffer serious injury, it was by no means inevitable and there is no evidence that a serious injury was deliberately inflicted.

In evaluating whether a use of force is excessive, the court must also consider whether lesser measures could have accomplished the same objective. It is undisputed that Officer Bellavance's use of the arm bar takedown occurred only after he had employed a verbal command and then a minimal level of force to move Plaintiff away from the crowd. Officer Bellavance's escalation of force was in direct response to Plaintiff's non-compliant conduct. Because that non-compliant conduct posed a risk of physical injury to Officer Bellavance and others and took place on a crowded street with an unruly and potentially intoxicated crowd, a serious and imminent threat of harm existed. In such circumstances, a further intrusion on Plaintiff's Fourth Amendment rights and an escalation of force in the form of an arm bar takedown was objectively reasonable. *See Graham*, 490 U.S. at 396 (determining whether the force used is reasonable by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake").

The fact that the maneuver may have been performed imperfectly does not alter that conclusion. *See Stephenson*, 332 F.3d at 78.

Because Officer Bellavance's use of the arm bar takedown was reasonable under the circumstances, Plaintiff cannot establish his claim of excessive force as no constitutional violation occurred. Assuming *arguendo* that a constitutional violation occurred, Officer Bellavance would nonetheless be entitled to qualified immunity and summary judgment in his favor because "[u]nder the particular circumstances presented here, no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon*, 66 F.3d at 426.

For the reasons stated above, the court GRANTS Officer Bellavance's motion for summary judgment with regard to Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 (Count IV).

## E.     Whether Officer Bellavance is Entitled to Summary Judgment with Regard to Plaintiff's State Law Claims.

In addition to his claims under 42 U.S.C. § 1983, Plaintiff asserts state law claims of excessive force,[8] assault and battery, and intentional infliction of emotional distress against Officer Bellavance. Officer Bellavance contends that he is entitled to summary judgment on these claims because he did not violate Vermont law. In the alternative, he argues he is entitled to qualified immunity because when he used force against Plaintiff, he was acting within the scope of his employment and engaged in a discretionary function, and there is no evidence of bad faith.

### 1.     Excessive Force and Assault and Battery.

Although no Vermont statute or case law affirmatively recognizes a claim of excessive force, the court assumes *arguendo* that such a claim may exist under Vermont law and if so, concludes that it is likely to be governed by the same standard as that claim under the Fourth Amendment. Because the court has concluded that Officer Bellavance

---

[8] Defendants contend that there is no tort of excessive force under Vermont law, citing *Mayo v. Scott*, 2010 WL 6634389 (Vt. Super. Ct. Sept. 14, 2010). However, *Mayo* merely holds that an "excessive force claim, although not one properly characterized as an intentional tort claim, is of constitutional dimension, not one arising out of negligence law." *Id.*

20

did not use excessive force in violation of the Fourth Amendment, it reaches that same conclusion under Vermont law. Accordingly, to the extent Vermont recognizes a claim for excessive force, Officer Bellavance has demonstrated that he is entitled to have that claim dismissed. Officer Bellavance's motion for summary judgment on Plaintiff's state law claim of excessive force is hereby GRANTED.

Under Vermont law, battery "is an intentional act that results in harmful contact with another." *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 889 A.2d 746 (citing Restatement (Second) of Torts § 13 (1965)). "At common law, the civil tort of assault is defined as any gesture or threat of violence exhibiting an [intention] to assault, with the means of carrying that threat into effect . . . unless immediate contact is impossible." *MacLeod v. Town of Brattleboro*, 2012 WL 5949787, at *8 (D. Vt. Nov. 28, 2012) (internal quotation marks omitted); *see also Bishop v. Ranney*, 7 A. 820, 820-21 (Vt. 1887) ("And any gesture or threat of violence exhibiting an intention to assault, with the means of carrying that threat into effect, is an assault, unless immediate contact is impossible.") (internal quotation marks omitted).

"When assault and battery is alleged against police officers, 'the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged.'" *Crowell v. Kirkpatrick*, 667 F. Supp. 2d 391, 417 (D. Vt. 2009), *aff'd*, 400 F. App'x 592 (2d Cir. 2010) (quoting *Smith v. District of Columbia*, 882 A.2d 778, 788 (D.C. 2005)). Police officers are privileged to use force in arresting a suspect, but the privilege "ends when the force used is excessive, which is determined using the same standards used to analyze a Fourth Amendment excessive force claim." *Mayo v. Winn*, 2009 WL 8103582 (Vt. Super. Ct. May 14, 2009).

Here, the court has determined that the force used by Officer Bellavance was not excessive. Accordingly, the only question is whether Officer Bellavance's use of force was reasonably necessary and thereby privileged. As Officer Bellavance was engaged in crowd control and an investigation of disorderly conduct, he was "privileged to use force," *id.*, in both escorting Plaintiff away from the crowd and effecting his arrest. Under such circumstances, a claim of assault and battery against a police officer cannot

21

be established. Officer Bellavance's motion for summary judgment on Plaintiff's claim of assault and battery is therefore GRANTED.

Assuming *arguendo* that Plaintiff could establish the essential elements of his state law claims of excessive force and assault and battery, Officer Bellavance would nonetheless be entitled to qualified immunity under Vermont law and therefore summary judgment in his favor.

## 2. Qualified Immunity Under Vermont Law.

"[T]he substantive law of Vermont governs the applicability of qualified immunity to [the plaintiff's] state law claims." *Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991).

> [O]nce the issue [of qualified immunity is] raised, [the plaintiff] ha[s] the burden to rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Sprague v. Nally*, 2005 VT 85, ¶ 4 n.3, 178 Vt. 222, 882 A.2d 1164 (internal quotation marks omitted) (quoting *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)).

Under Vermont law, "[q]ualified immunity attaches to public officials who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts." *Baptie*, 2013 VT 117, ¶ 11 (internal quotation marks omitted). "Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." *Sprague*, 2005 VT 85, ¶ 4 (quoting *Cook v. Nelson*, 712 A.2d 382, 384 (Vt. 1998)).

Plaintiff does not dispute that Officer Bellavance acted within the scope of his employment when he used an arm bar takedown to bring Plaintiff to the ground, nor does he dispute that Officer Bellavance's acts were discretionary rather than ministerial. *See Amy's Enters. v. Sorrell*, 817 A.2d 612, 617 (Vt. 2002) ("This Court has previously held that decisions made in the course of investigations are discretionary."); *see also*

22

*MacLeod*, 2012 WL 5949787, at \*18 ("[H]ow a police officer responds to the decision of whether, when, and how to arrest a person has repeatedly been recognized in Vermont to be a quintessential discretionary function."). As Plaintiff offers no evidence that Officer Bellavance failed to act in good faith, Officer Bellavance is entitled to qualified immunity under Vermont law. *See Hudson v. Town of E. Montpelier*, 638 A.2d 561, 563 (Vt. 1993) (holding "lower-level government employees are immune from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority"). Qualified immunity thus provides an alternative basis upon which summary judgment in Officer Bellavance's favor is warranted.

### 3. Intentional Infliction of Emotional Distress.

Because Plaintiff's final state law claim alleges that Officer Bellavance intentionally inflicted emotional distress on Plaintiff, it would be difficult to imagine a circumstance in which a police officer committed this tort and yet did so in the scope of his or her employment as a discretionary activity undertaken in good faith. The very nature of the tort therefore renders a qualified immunity analysis unproductive.

Vermont law requires that a plaintiff claiming intentional infliction of emotional distress establish: "(1) conduct that is extreme and outrageous, (2) conduct that is intentional or reckless, and (3) conduct that causes severe emotional distress." *Baptie v. Bruno*, 2013 VT 117, ¶ 24, 195 Vt. 308, 88 A.3d 1212. "This is a heavy burden that requires plaintiff to show that the [defendant's] conduct 'was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable.'" *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265, 79 A.3d 854 (quoting *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 848 A.2d 344). "The standard for outrageousness is objective." *Id.* Accordingly, "[i]t is for the court to determine as a threshold question whether a jury could reasonably find that the conduct at issue meets this test." *Jobin v. McQuillen*, 609 A.2d 990, 993 (Vt. 1992).

Even if Officer Bellavance incorrectly applied the takedown maneuver, nothing about his conduct was so extreme "as to go beyond all possible bounds of decent and

23

tolerable conduct in a civilized community[.]" *See Cate*, 2013 VT 64, ¶ 28; *see also Mayo*, 2009 WL 8103582 (holding that even where there are disputed facts as to whether an officer applied excessive force or battered the plaintiff, "a jury could not reasonably find that the Troopers' actions rose to a level sufficient to establish the elements of a claim for [intentional infliction of emotional distress]."). No rational jury could reach a contrary conclusion. *See Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993) (holding summary judgment appropriate "when reasonable minds cannot differ as to the import of the evidence before the court"). The court therefore GRANTS summary judgment to Officer Bellavance on Plaintiff's intentional infliction of emotional distress claim (Count VII).

## F.   Whether Burlington is Entitled to Summary Judgment.

Although the claims against it are stayed, Burlington argues that the court should grant summary judgment in its favor on Plaintiff's claims for deprivation of civil rights, negligent supervision, hiring, and retention, and municipal liability because there is no underlying liability against Officer Bellavance. As the parties have fully briefed the issues and as the stay was conditioned on the resolution of Plaintiff's claims against Officer Bellavance, the court hereby lifts the stay and determines whether summary judgment is appropriate.

Under federal law, "a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001). Correspondingly, under Vermont law, "claims against the State [that] are derivative of the claims against the individual defendants" must fail where the individual defendant is not liable. *Czechorowski v. State*, 2005 VT 40, ¶ 28, 178 Vt. 524, 872 A.2d 883. Because the court has determined that Officer Bellavance neither violated Plaintiff's Fourth Amendment rights nor committed a tort under Vermont law, there is no underlying liability that may provide a predicate for Plaintiff's claims against Burlington. Burlington is therefore entitled to summary judgment on Plaintiff's claims. The court thus GRANTS Burlington's motion for summary judgment on Plaintiff's claims for

24

deprivation of civil rights (Count IV), negligent supervision, hiring and retention (Count V), and municipal liability (Count VI).

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion for summary judgment (Doc. 52).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of April, 2015.

Christina Reiss, Chief Judge
United States District Court